ORIGINAL

# In the United States Court of Federal Claims

No. 15-1122C
Filed: June 30, 2016
**TO BE PUBLISHED**

FILED
JUN 3 0 2016
U.S. COURT OF
FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| JOHNNY L. SQUIRES,  *  Plaintiff, *pro se*, * * v. * * THE UNITED STATES, * * Defendant. * * * | Military Pay Act, 37 U.S.C. § 204; 28 U.S.C. § 2501 (Time for Filing Suit); RCFC 12(b)(1) (Subject Matter Jurisdiction). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Johnny L. Squires**, Walterboro, South Carolina, *pro se*.

**Joshua D. Schnell**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Judge*.

**I.    RELEVANT FACTUAL BACKGROUND.[1]**

Johnny L. Squires was enlisted in the United States Marine Corps on May 27, 1969. Compl. App. at A1.[2] Mr. Squires served in the United States Marine Corps for over fourteen

---

[1] The relevant facts were derived from Plaintiff's October 5, 2015 Complaint ("Compl.") and the exhibits attached thereto ("Compl. App. A1–2"); the Government's February 2, 2016 Motion To Dismiss ("Gov't Mot.") and the exhibits attached thereto ("Gov't App. A1–36"); and Plaintiff's March 4, 2016 Response ("Pl. Resp.") and the exhibits attached thereto ("Pl. Resp. App. A1–37"). *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999) ("Fact-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint . . . are challenged.").

[2] Because the pages in Plaintiff's October 5, 2015 Complaint incorrectly were numbered, the court herein cites the page numbers assigned by the court when filed.

months before he was discharged "under conditions other than honorable."[3] Compl. App. at A1; Gov't App. at A1. During his term of service, Mr. Squires became ill and was granted a leave pass on May 22, 1970. Pl. Resp. App. at A5. Mr. Squires was hospitalized from May 23, 1970 to May 30, 1970, at Colleton Medical Center in Walterboro, South Carolina. Pl. Resp. at 1; Pl. Resp. App. at A1, A2. Mr. Squires was diagnosed with pneumonia and hemoptysis. Pl. Resp. App. at A2. Between May 31, 1970 and September 24, 1970, Mr. Squires accrued 116 days of continuous unauthorized leave, which subjected him to the possibility of trial by court martial. Gov't App. at A7, A14.[4]

On November 5, 1970, Mr. Squires submitted a request for an undesirable discharge after he consulted with a military lawyer. Pl. Resp. App. at A26; Gov't App. at A5, A7.[5] On November 25, 1970, Mr. Squires's request was approved. Compl. App. at A1. The discharge waived a trial by court martial. Gov't App. at A7.

On July 11, 1979, Mr. Squires asked the Naval Discharge Review Board ("NDRB") to upgrade his discharge status, because Mr. Squires believed that he could update his discharge status at a later date. Gov't App. at A2; Compl. at 3. In his application to the NDRB, Mr. Squires represented that, following his unauthorized leave, he was presented with a choice between re-enlisting for six years or accepting an undesirable discharge. Gov't App. at A2. The NDRB considered Mr. Squires's request, but denied it on November 26, 1979, finding that Mr. Squires failed to provide "reliable, credible evidence to support [his] assertions." Gov't App. at A3, A7.

On March 3, 2003, Mr. Squires filed a petition with the Board for Correction of Naval Records ("BCNR") to correct his military record. Gov't App. at A12.[6] The petition represented that Mr. Squires was not aware of the type of discharge he received. Gov't App. at A12. And, when Mr. Squires requested a discharge on November 5, 1970, he was told by United States Marine Corps personnel that he would receive a general discharge under honorable conditions.

---

[3] Although the Government's February 2, 2016 Motion To Dismiss indicated that Plaintiff served in the Marine Corps for approximately eighteen months, Form DD-214 lists that Plaintiff's total service was fourteen months and two days. Compl. App. at A1; Gov't App. at A1.

[4] The record does not clearly indicate where Plaintiff was during the period of unauthorized leave between May 31, 1970 and September 24, 1970.

[5] The United States Navy formerly referred to a "discharge under other than honorable conditions" as an "undesirable discharge." See 32 C.F.R. § 742.109(3). An undesirable discharge, now referred to as a discharge under conditions other than honorable, is an administrative discharge. Id. A dishonorable discharge is a punitive discharge ordered by court martial. See 32 C.F.R. § 742.111(b).

[6] Although the petition is, in fact, an appeal of the NDRB's decision, the application is titled "Application for Correction of Military Record," and is referred to as an application for the correction of his record by the BCNR. The NDRB's decision is not referenced in the BCNR decision.

Gov't App. at A12. In addition, Mr. Squires claimed that he was suffering from a lung injury received while on active duty and required disability benefits. Gov't App. at A12.

On December 8, 2003, the BCNR denied Mr. Squires's petition, because "the evidence and materials submitted were not sufficient to warrant [re-characterization]" of his discharge. Gov't App. at A15. The BCNR also found that Mr. Squires submitted his request for an undesirable discharge on November 5, 1970 to be "spared the stigma of a court-martial conviction and the potential penalties of a punitive discharge and confinement at hard labor." Gov't App. at A14.

On four occasions between 2010 and 2015, Mr. Squires requested that the BCNR reconsider the December 8, 2003 decision. Gov't App. at A16–35. The BCNR denied each of these requests. Gov't App. at A16–35.

## II. PROCEDURAL HISTORY.

On October 5, 2015, Mr. Squires ("Plaintiff") filed a Complaint in the United States Court of Federal Claims, alleging that: he was wrongfully discharged from the United States Marine Corps; his medical records were never included in his military record; and his discharge status should be upgraded. Compl. at 3, 7.

On October 19, 2015, Plaintiff filed a Motion For Leave To Proceed *In Forma Pauperis*, that the court granted on October 21, 2015.

On December 4, 2015, the Government filed a Motion For Extension Of Time To File An Answer To The Complaint, that the court granted on December 7, 2015.

On February 2, 2016, the Government filed a Motion To Dismiss, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). On March 4, 2016, Plaintiff filed a Response. On March 21, 2016, the Government filed a Reply.

On April 7, 2016, Plaintiff filed a Memorandum under seal, requesting permission to file documents in support of his case, that the court granted on May 12, 2016.

## III. DISCUSSION.

### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." § 1491(a)(1). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency

regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages . . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government[.]" *Testan*, 424 U.S. at 400 (citing *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 607 (1967)). And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence."). This court has long recognized that the Military Pay Act, 37 U.S.C. § 204, "serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge . . . . [and] 'confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service.'" *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (quoting *Sanders v. United States*, 219 Ct. Cl. 285 (1979) (*en banc*)). This right to pay serves as the basis for the court's Tucker Act jurisdiction. *Id.* To invoke this court's jurisdiction in a military pay case, a plaintiff must file a complaint within six years after such a claim accrues. 28 U.S.C. § 2501.

**B.     Standard Of Review For *Pro Se* Litigants.**

*Pro se* plaintiffs' pleadings are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). This court traditionally examines the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Cl. Ct. 456, 468 (1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

**C.     Standard For Motion To Dismiss Under RCFC 12(b)(1).**

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defense[] by motion: (1) lack of subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all

4

reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

### D. The Government's February 2, 2016 Motion To Dismiss.

#### 1. The Government's Argument.

The Government argues that the court does not have jurisdiction to adjudicate Plaintiff's wrongful discharge claim. Gov't Mot. at 6. Although Plaintiff's claim is subject to the Military Pay Act, it is now barred by the statute of limitations. Gov't Mot. at 6–7. Plaintiff's claim accrued in 1970 when he was undesirably discharged. Gov't Mot. at 7. Plaintiff's appeals to the BCNR do not toll the statute of limitations. Gov't Mot. at 7. Therefore, the court does not have jurisdiction to adjudicate Plaintiff's wrongful discharge claim, as the October 5, 2015 Complaint was filed nearly 40 years after the six-year statute of limitations period. Gov't Mot. at 7.

If the October 5, 2015 Complaint is construed as "seeking revision of his military records to qualify him for disability pay and benefits," Plaintiff's claim also is barred by the six-year statute of limitations. Gov't Mot. at 7. A claim for disability benefits accrues when a service member first seeks and is denied disability benefits from a competent board. Gov't Mot. at 7. The Government contends that Plaintiff's potential disability claims accrued on December 8, 2003, when the BCNR denied the request to change his discharge to a medical one and to find that he incurred a lung injury during his service. Gov't Mot. at 7. Since Plaintiff's potential disability claims accrued more than fourteen years ago, the court does not have jurisdiction to adjudicate Plaintiff's disability claims. Gov't Mot. at 7–8.

#### 2. Plaintiff's Response.

Plaintiff responds by urging the court not to dismiss this case, because sufficient evidence was presented to show that: (1) Plaintiff's undesirable discharge was due to a conspiracy planned by high ranking officers of the United States Marine Corps; and (2) the wrong medicine was administered to Plaintiff when he was stationed at Guantanamo Bay, Cuba, causing his pneumonia and leading to the accrual of 116 days of unauthorized leave. Pl. Resp. at 3.

#### 3. The Court's Resolution.

The court is cognizant of the obligation liberally to construe *pro se* plaintiffs' pleadings. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that the "*pro se* document is to be liberally construed"). But, *pro se* plaintiffs must still "comply with the applicable rules of procedural and substantive law." *Walsh v. United States*, 3 Cl. Ct. 539, 541 (1983).

Plaintiff requests that the court change his undesirable discharge status to a discharge for medical reasons. Compl. at 7. Section 2501 of Title 28 provides that all claims of which the United States Court of Federal Claims has jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. This statute sets "jurisdictional limits" on claims that the United States Supreme Court has held are "not susceptible to equitable tolling." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136 (2008).

5

It is well established that a claim "accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.*, when 'all events have occurred to fix the Government's alleged liability[.]'" *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (*en banc*). A claim for back pay accrues at the time the service member is discharged from the military. *Id.* ("In a military discharge case . . . the Court of Claims ha[s] long held that the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge."); *see also Johnson v. United States*, 123 Fed. Cl. 174, 177 (2015) ("Military pay claims based on a theory of wrongful discharge accrue at the time of discharge."). In this case, the statute of limitations is not tolled by Plaintiff's petitions to the NDRB or BCNR. *See Martinez*, 333 F.3d at 1312 ("The creation of a permissive administrative remedy, either by statute or by regulation, does not affect the time period for which Congress has waived sovereign immunity and permitted judicial relief to be sought."); *see also Friedman v. United States*, 159 Ct. Cl. 1, 11 (1962) ("Where . . . an administrative remedy is permissive . . . the running of limitations is not deferred or tolled by such optional administrative consideration."). Plaintiff's claims for wrongful discharge accrued in November 1970. Compl. App. at A1. Plaintiff did not file a Complaint until October 5, 2015, almost 40 years after the six-year statute of limitations period. As such, Plaintiff's claim for wrongful discharge is barred by the statute of limitations. Moreover, even if the October 5, 2015 Complaint is construed as a claim for disability benefits, that claim accrued in 2003, after the BCNR denied Plaintiff's request to upgrade his discharge to a medical one and consider him for disability benefits. *See Friedman*, 159 Ct. Cl. at 13.

For these reasons, the court must dismiss the claims alleged in the October 5, 2015 Complaint. Although Plaintiff's claims are barred in this court, the United States Navy on June 1, 2016, adopted a policy that may be relevant to Plaintiff's claims. Under this new policy, the United States Navy will consider diagnosed mental health conditions in determining a service member's discharge characterization and disability status when the service member is processed for any type of involuntary administrative separation. If a diagnosed medical condition contributed to misconduct by the service member, the medical condition will take precedence over the misconduct issues. A service member who believes that this policy affects his current discharge or disability status may file a petition with the BCNR to have his status reviewed, and no statute of limitations applies to such an appeal.[7]

---

[7] *See* Memorandum from Ray Mabus, Secretary of the United States Navy, to the Chief of Naval Personnel (June 1, 2016) (on file with the United States Navy); Press Release, United States Navy, SECNAV Announces New Administrative Separation Policy, No. NNS160601-18 (June 1, 2016), www.navy.mil/submit/display.asp?story_id=94996.

## IV. CONCLUSION.

For these reasons, the Government's February 2, 2016 Motion to Dismiss is granted. *See* RCFC 12(b)(1). The Clerk is directed to dismiss the October 5, 2015 Complaint.

**IT IS SO ORDERED.**

_____
**SUSAN G. BRADEN**
**Judge**